Argued February 22, modified and remanded March 18, 1974

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
JEWELL, *Respondent, and* JEWELL
(No. 69468), *Appellant.*
519 P2d 1288

*Gerald R. Pullen,* Portland, argued the cause and filed the brief for appellant.

*M. Chapin Milbank,* Salem, argued the cause and filed the brief for respondent.

Before LANGTRY, Presiding Judge, and FORT and TANZER, Judges.

LANGTRY, P. J.

Respondent-husband appeals from the decree in this dissolution of marriage case. The entire argument on appeal has been about the division of the property, and we deem that to be the only issue.

The parties were married in 1952 and have two children; one a daughter now just short of 21 years of age, and the other a son born in 1961. The marriage was featured by and ended in bitter recriminations which have caused an extreme emotional disturbance of the younger child.

The husband's business ventures were ill-starred and marked by failure. His father advanced him $35,000 to commence the last of these, which was a motor vehicle sales agency that failed in a short time and left the husband indebted to the motor company for about $14,000 in addition to the loss of what had been invested.

The husband's father had given him what are called "Jolliffe Mineral rights" which appear to be a certain share of the net proceeds of some oil wells located upon lands in the middle west. The record

indicates that the value of this share may be some-where between $20,000 and $50,000. No witness seemed sure of its value or future prospects. When the motor company began to enforce its claim against husband, husband transferred the share to his wife, which fact became known, and she was required to assign part of the earnings of the share, which are paid quarterly, for reduction of the indebtedness. At the time of trial she had been receiving about $250 per quarter and the motor company about $350 per quarter. Some $11,000 remains unpaid on that particular indebtedness.

The trial court awarded sole ownership of this share to the wife subject to the assignment, and also awarded to her a lot which the parties had acquired that is described as Gravenhorst Fruitfarms, part of Lot 27. This lot was variously estimated in the evidence to be worth up to $25,000, and wife testified $10,000 had been refused for it. The family home is apparently worth some $17,000 to $20,000 subject to a state veterans' loan with a balance of some $10,000 to $11,000 remaining against it. This was awarded equally to the parties as tenants in common subject to the indebtedness with the proviso that the wife is entitled to its possession until the son becomes of age or emancipated or the parties otherwise agree to its sale. In lieu of support money for the son, husband was required to pay the $125 monthly mortgage loan instalment to the Department of Veterans' Affairs. The wife was required by the decree to keep up fire insurance, taxes and sewer assessments. The decree appears not to recognize that payments on a veterans' loan ordinarily include fire insurance and taxes. The decree allowed each party to keep described personal property in their respective possession.

The wife was required to pay off three debts amounting to $2,711 and the husband was required to pay all other indebtedness including the motor company debt to any extent that it is not ultimately paid by the mineral right assignment. These other debts appear to amount to some $9,300 or $9,400 exclusive of the indebtedness on the family home and money owed on a life insurance policy which has been wiped out by loans and unpaid premiums.

■ We conclude from our de novo trial on the record that the division of the property by the trial court is unfair to the husband, particularly because what appears to be the greatest value in the estate, the mineral rights, was given to the husband by his parents, and the decree gives it to the wife, except for the debt. We view the act of changing its ownership from husband to wife to be their joint act for one obvious purpose—to escape paying a creditor—and one should gain no more than the other as a result of it. The husband is presently employed as a night watchman and the wife has occasional employment. Unless the parties take bankruptcy, either one or both of them will be harassed by judgment creditors. To avoid this as much as possible, the title to the Gravenhorst Fruitfarms property should be in the parties as tenants in common, but undivided interests of 22.5 per cent in the wife and 77.5 per cent in the husband, which are the approximate percentages of the unsecured indebtedness the decree requires each respectively to pay off. Under the provisions of ORS 107.105 (4) either party will be able to force a partition of the property which will in turn allow payment upon the debts.

■■ The disposition the trial court made with refer-

ence to the family home should remain the same, with the husband paying the veterans' loan payments and the wife the upkeep and the indebtedness against the home that is not included under the loan payments. The wife should continue to have the proceeds from the mineral right share which are allowed under the assignment to the motor company. However, when the motor company indebtedness is paid, the parties should share equally in the ownership of this asset and its proceeds. In other respects we think the division of the property and requirements of the trial court decree should be unchanged.

Modified and remanded for entry of a new decree in accordance with this opinion. Costs to neither party.